IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


PEGGY LYNN BROWN o/b/o
J.L.S., a minor child                                                    PLAINTIFF


        v.                              CIVIL NO. 07-5211


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                           DEFENDANT


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Peggy Lynn Brown, brings this action on behalf of her minor nephew, J.L.S.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying J.L.S.'s application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

I.      **Procedural Background:**

Plaintiff protectively filed the current application for SSI on J.L.S.'s behalf on July 11,

2005, alleging that J.L.S. is disabled due to avascular necrosis of the right hip and headaches.

(Tr. 50-53).  An administrative hearing was held on June 5, 2007, at which plaintiff and J.L.S.

testified.  (Tr. 345-388).  Plaintiff was represented by counsel.

The ALJ, in a written decision dated July 30, 2007, found that J.L.S. was not disabled,

as J.L.S. did not have an impairment that met or was medically or functionally equal to a listed

impairment.  (Tr. 12-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on October 4, 2007.  (Tr. 3-5).  Subsequently, plaintiff filed this action.

AO72A
(Rev. 8/82)

(Doc. 1).  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  (Doc. 8,9).

## II.    Evidence Presented:

An administrative hearing was held before the ALJ on June 5, 2007.  J.L.S. was sixteen years of age and was a sophomore in high school.  J.L.S. testified he was able to take care of his personal needs and do household chores.  J.L.S. testified he was able to attend classes, that he had friends at school and that he most enjoyed working in the library.  J.L.S. testified he was able to play video games and to swim when they went to the lake.

Plaintiff testified J.L.S. comes home from school and plays video games and lays on his bed.  (Tr. 374).  Plaintiff testified J.L.S. is not supposed to use a trampoline, ride bikes, jump, run or participate in outside sports.  Plaintiff testified J.L.S. only asks for pain medication when his pain is unbearable.  (Tr. 376).  She further testified J.L.S. sometimes has headaches and that he injured his foot four to six months prior to the hearing.

The pertinent medical evidence in this case reflects the following.  On April 17, 2004, J.L.S. was admitted into Northwest Medical Center after jumping four feet off the back of a back hoe and injuring his right hip. (Tr. 222-236).  Dr. James M. McKenzie noted J.L.S. was healthy in appearance, alert and oriented. (Tr. 224).  Dr. McKenzie noted J.L.S. had minimal external rotation of the right lower extremity.  J.L.S. had no tenderness about the knee or thigh.  Radiographs revealed a displaced epiphysis on the femoral neck medially.  Dr. McKenzie noted a light abutment of the lateral column of the femoral neck against the lateral edge of the acetabulum.  J.L.S.'s growth plates were almost closed and the iliac apophysis showed J.L.S. was about a Risser four. Dr. McKenzie opined J.L.S. most likely had an acute and chronic capital

-2-

femoral epiphysis.  Dr. McKenzie recommended a closed reduction and percutaneous single screw fixation.  J.L.S. underwent this procedure on April 18th without complication. (Tr. 226).

Progress notes dated April 23, 2004, report J.L.S. had his sutures removed.  (Tr. 240). Dr. Rodger C. Dickinson, Jr., stressed how important it was for J.L.S. to stay on his crutches all the time.  Dr. Dickinson noted J.L.S. was feeling pretty comfortable and not having very much pain.  J.L.S. was to follow up with Dr. McKenzie in two to three weeks.

On May 11, 2004, Dr. McKenzie noted J.L.S. did not complain of any pain.  (Tr. 239). Dr. McKenzie noted J.L.S. had an excellent pain free range of motion with equal leg lengths. J.L.S. was neurovascularly intact. Dr. McKenzie noted x-rays revealed excellent screw fixation in the central portion of the epiphysis. There was no evidence of avascular necrosis.  Callus formation was noted about the inferior aspect of the physis.  Dr. McKenzie diagnosed J.L.S. with stable postoperative course following internal fixation for slipped capital femoral epiphysis.  Dr. McKenzie noted J.L.S. could discontinue crutches and could be weight bearing as tolerated. J.L.S. was to return in three months for x-rays and follow-up.

Progress notes dated August 3, 2004, report J.L.S. did not complain of any significant pain and that J.L.S. had been returning to normal activities. (Tr. 237).  Upon examination, Dr. McKenzie noted J.L.S. had excellent pain free range of motion.  Dr. McKenzie noted J.L.S. walked with a very slight limp and that there was evidence of some quadriceps atrophy. Dr. McKenzie noted J.L.S. was neurovascularly intact. X-rays of the right hip showed excellent position of the hardware and no obvious evidence of bone abnormalities. Dr. McKenzie noted J.L.S. would be weight bearing as tolerated and could participate in school and physical therapy. J.L.S. was to return in six months for x-rays.

-3-

In progress notes dated January 13, 2005, J.L.S. reported that the previous summer he was able to tolerate all of his activities. (Tr. 269). In November, J.L.S. reported he began to have considerable pain in the hip. J.L.S. reported he was unable to tolerate any lengthy activities or walking for any given period of time. Dr. Michael Griffey noted J.L.S. was using crutches and limping on the right lower extremity. X-rays revealed considerable flattening of the anterolateral aspect of the right femoral head. Dr. Griffey diagnosed J.L.S. with a right slipped capital femoral epiphysis with complication of avascular necrosis. (Tr. 269). Dr. Griffey recommended J.L.S. be non-weight bearing and that he undergo removal of the screw with an arthrogram.

On January 19, 2005, after experiencing significant pain not associated with a trauma, J.L.S. underwent the screw removal from his right hip and an arthrogram. (Tr. 247, 250). Following the procedure, J.L.S. underwent a CT scan. (Tr. 263).

On March 7, 2005, plaintiff underwent a right hip flexion valgus intertrochanteric osteotomy, right hip anterior femoral neck osteoplasty, arthrotomy of the right hip, debridement of a chondral flap of the femoral head and micro pick of the femoral head performed by Dr. Griffey. (Tr. 242). Dr. Griffey noted J.L.S. did extremely well postoperatively. Dr. Griffey noted J.L.S. was transferred independently to a wheelchair and that J.L.S. was taking some steps with a walker non-weight bearing on his operative extremity. J.L.S. was discharged on March 10th and was to follow-up with Dr. Griffey in ten days for staple removal and clinical check.

Progress notes dated March 24, 2005, report J.L.S.'s wound was clean and dry. (Tr. 254). Dr. Griffey noted plain films showed no loss of fixation with the blade plate and a congruous head. Dr. Griffey noted he was very pleased with J.L.S.'s post operative course and that J.L.S.

AO72A
(Rev. 8/82)

seemed to be happy to have undergone the procedure.  Dr. Griffey hoped this would buy J.L.S.

significant time and delay any type of hip or total hip arthroplasty.

Physical therapy notes dated May 4, 2005, from Alpha & Omega Therapy Services, report

J.L.S. had no complaints.  (Tr. 331).  J.L.S. did report minimal fatigue and tightness.

Physical therapy notes dated May 10, 2005, report J.L.S. denied pain.  (Tr. 330).  The

therapist noted J.L.S. showed improved strength and decreased tenderness.

Physical therapy notes dated May 12, 2005, report J.L.S. denied pain or problems and

indicated the exercises were getting easier.  (Tr. 329).  During therapy, J.L.S. did report fatigue

but denied pain.

Physical therapy notes dated May 17, 2005, report J.L.S. denied pain.  (Tr. 328).  The

therapist noted J.L.S. had a new order form from his doctor for continued therapy.  The therapist

noted J.L.S. complained of moderate fatigue but no pain with any of the exercises.

Progress notes dated May 17, 2005, report J.L.S. was in for a follow-up for his right hip.

(Tr. 253). Dr. Griffey noted plain films showed excellent alignment of the joint.  Dr. Griffey

noted there was a nice congruent joint space.  J.L.S. denied pain.  Dr. Griffey thought J.L.S.

could advance his weight bearing over the course of the next two to four weeks.

Physical therapy notes dated May 19, 2005, report J.L.S. had no complaints of pain at

present.  (Tr. 326).  The therapist noted J.L.S. showed good technique with exercises.  J.L.S.

continued to show difficulty with abduction activities but all others were progressing well.

Physical therapy notes dated May 24, 2005, report J.L.S. denied pain and reported the

exercises were getting easier.  (Tr. 325).  The therapist noted J.L.S. showed good technique with

increased range with all activities.

AO72A
(Rev. 8/82)

Physical therapy notes dated May 26, 2005, report J.L.S. denied pain and reported decreased tightness. (Tr. 324). J.L.S. complained of moderate fatigue with all exercises today but showed good technique throughout.

Physical therapy notes June 1, 2005, report J.L.S. was using one crutch but denied pain or problems. (Tr. 323). The therapist noted J.L.S.'s difficulty with some exercises and fatigue but no pain.

Physical therapy notes dated June 3, 2005, report J.L.S. had no complaints of pain and reported he was getting stronger. (Tr. 322). The therapist noted J.L.S. showed good techniques with exercises with moderate complaints of fatigue but no pain.

Physical therapy notes dated June 7, 2005, report J.L.S. reported no complaints of pain and that his exercises were getting easier. (Tr. 321). The therapist noted J.L.S. complained of moderate fatigue while doing exercises.

Physical therapy notes dated June 8, 2005, report J.L.S. denied pain and indicated straight leg raise exercises were feeling more stable at home. (Tr. 320). J.L.S. complained of moderate fatigue but no pain with exercises. J.L.S. indicated he was ready for full weight bearing next week.

Physical therapy notes dated June 14, 2008, report J.L.S. had no complaints and that he was anxious to proceed. (Tr. 319). The therapist noted J.L.S. complained of fatigue and difficulty with increased weight bearing showing unbalance but no pain.

Physical therapy notes dated June 16, 2005, report J.L.S. denied pain or problems. (Tr. 318). J.L.S. complained of moderate fatigue with treatment.

AO72A
(Rev. 8/82)

Physical therapy notes dated June 21, 2005, report J.L.S. denied pain and indicated he was feeling stronger and more stable. (Tr. 317). The therapist noted J.L.S. complained of moderate fatigue with treatment but no pain. J.L.S. continued to have lateral control difficulty.

Physical therapy notes dated June 23, 2005, report J.L.S. denied pain or problems. (Tr. 316). J.L.S. reported he continued to use a cane on uneven surfaces. The therapist noted J.L.S. complained of fatigue but no pain. J.L.S. had an antalgic gait.

Physical therapy notes dated June 27, 2005, report J.L.S. denied pain and reported he was improving in all areas at home. (Tr. 315). The therapist noted J.L.S. tolerated treatment with moderate to max fatigue.

On June 29, 2005, Ms. Sheila Wilkerson MS, PT, of Alpha & Omega Therapy Services, indicated J.L.S. had completed his scheduled therapy and performed his home exercises well. (Tr. 288). Ms. Wilkerson noted J.L.S. denied pain with all activities. Ms. Wilkerson reported J.L.S. ambulated without an assistive device with the exception of the use of a cane with uneven surfaces. J.L.S. also required verbal cueing to decrease an antalgic gait pattern which he could improve with concentration. Ms. Wilkerson opined J.L.S.'s gait pattern might be due to weak gluteus medius musculature by the presentation of the gait. Ms. Wilkerson noted J.L.S. had continued needs in the areas of range of motion, strengthening and gait training.

Physical therapy notes dated June 30, 2005, report J.L.S. denied pain but reported he continued to use a cane and that he had a moderate antalgic gait. (Tr. 314). The therapist noted J.L.S. continued to have difficulty with step up and gait.

AO72A
(Rev. 8/82)

In an undated letter, Ms. Wilkerson stated J.L.S. had attended all the sessions on his prescription but could benefit from additional therapy.  (Tr. 290).  Ms. Wilkerson stated her concern was J.L.S.'s continued antalgic gait pattern.

Progress notes dated August 16, 2005, indicate J.L.S.'s femoral head was staying very congruent. (Tr. 252).  Dr. Griffey noted there appeared to be some areas where he still needed to fill in around the proximal osteotomy site.  J.L.S. denied any pain.  Dr. Griffey recommended J.L.S. continue physical therapy. Dr. Griffey also provided J.L.S. a note stating J.L.S. should not be in physical education class and that he should use a cane while at school.  (Tr. 251).  J.L.S. was to return in six months.

Physical therapy notes indicate J.L.S. attended therapy in August through September 2005.  (Tr. 283-285).  Progress notes dated October 7, 2005, report J.L.S. had not reported pain, discomfort or fatigue with ambulation through the school day.  (Tr. 282).  Mr. Jamie Stefanski, PT, noted J.L.S. demonstrated increased range of motion of his right lower extremity and increased strength as well.  Mr. Stefanski noted J.L.S. continued to demonstrate a trendelenburg gait but was walking without an assistive device.  Mr. Stefanski noted J.L.S. was able to decrease his trendelenburg/leaning gait.  J.L.S. was discharged from physical therapy.

On September 19, 2005, Dr. S. Manley, a non-examining, medical consultant, opined J.L.S. had "no limitations" in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself and health and physical well-being; and "less than marked limitations" in the area of moving about and manipulating objects.  (Tr. 272-277).

-8-

On January 5, 2006, Dr. S.A. Whaley, a non-examining, medical consultant, opined J.L.S. had "no limitations" in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself and health and physical well-being; and "less than marked limitations" in the area of moving about and manipulating objects. (Tr. 334-339).

Progress notes dated February 8, 2006, report J.L.S. had gone on to heal from his most recent procedure without consequence. (Tr. 343). Dr. Griffey noted J.L.S. had a very nice concentric appearing femoral head. Dr. Griffey noted it was interesting that J.L.S.'s AVN had even filled in. Dr. Griffey observed J.L.S. was still walking with a bit of Trendelenburg gait but was overall walking heel toe. J.L.S. had no pain with range of motion of his hips. Dr. Griffey discussed with J.L.S. the need for hardware removal at some point in the future. Dr. Griffey told J.L.S. this procedure could be done either this summer or the following summer. Dr. Griffey stated the rational for the hardware removal sooner was to prevent a more difficult removal later in life when J.L.S. will eventually need a total hip replacement. Dr. Griffey asked J.L.S. to get back in touch with him six weeks prior to undergoing the hardware removal.

The record also includes an assessment from one of J.L.S.'s teachers. On September 11, 2005, Ms. Mande Wray, completed a Teacher Questionnaire. (Tr. 134-141). Ms. Wray indicated she had known J.L.S. for fifteen days and that she saw him for one school period a day. Ms. Wray noted J.L.S. had been called out of class to leave early at least three times during the current year and that J.L.S. had been absent once. (Tr. 134). Ms. Wray observed no problems in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself and health and physical well-being. Regarding the

AO72A
(Rev. 8/82)

domain of moving about and manipulating objects, Ms. Wray observed J.L.S. moved a little

slower than the other children his age but was able to get around in the halls and carry his books.

Ms. Wray noted J.L.S. was placed on homebound instruction for the 2004-2005 school year due

to his hip injury.

### III.     Discussion:

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the court would have

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, P.L. 104-

193, revised the standards for determining childhood disability. Under the "interim" revised

standards, a child is considered disabled if he has a medically determinable physical or mental

impairment, which results in marked and severe functional limitations, and which can be

expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. §

AO72A
(Rev. 8/82)

1382c(a)(3)(c)(I).  Effective January 2, 2001, the Commissioner promulgated "final" revised rules in response to public comments regarding the implementation of the revised rules .  *See* Childhood Disability Provisions, 65 Fed. Reg. 54747 (September 11,2000)(to be codified at 20 C.F.R. Pts. 404, 416).  Under these "final" rules there is now a single method, rather than four separate methods, for evaluating functional equivalence based only on six domains of functioning. 20 C.F.R. § 416.926a(b).  In the present case, in the decision dated July 30, 2007, the ALJ correctly used the "final" rules in making her disability determination.

The regulations implementing the revised standards prescribe a three-step process for making the disability determination.  First, the ALJ must determine whether the child has engaged in substantial gainful activity.  *See* 20 C.F.R. 416.924(b).  Second, the ALJ must determine whether the child has a severe impairment or combination of impairments.  *See* 20 C.F.R. 416.924(c).  Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. *See* 20 C.F.R. § 416.924(d).  In the present case, the ALJ found that J.L.S.'s claim failed at step three, as J.L.S. did not have an impairment that met or medically or functionally equaled a listed impairment.

First, we find there is substantial evidence on the record to support the ALJ's determination that J.L.S.'s impairments do not meet or medically equal in severity any listed impairment. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.  We next address whether J.L.S.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [J.L.S.] cannot do because of [his] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria."  20 C.F.R. § 416.926a(a).

-11-

Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. *See* 20 C.F.R. § 416.92a(d).  The ALJ determined that the facts in this case suggest J.L.S. has "less than marked" limitations in the area of moving about and manipulating objects; and "no limitations" in the areas of acquiring and using information, attending and completing tasks, interacting and relating to others, caring for oneself, and health and physical well-being.

We will now address each of the ALJ's domain determinations.  With regard to acquiring and using information, the ALJ determined J.L.S. had no limitations.   In making this determination, the ALJ noted J.L.S.'s teacher indicated J.L.S. does well and participates in class discussions and does not have a problem in this domain. Further, J.L.S. testified that he enjoys reading and enjoys helping with all aspects of the school library.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.L.S. has no limitations in this area of functioning.

With regard to attending and completing tasks, the ALJ found J.L.S. had no limitations. The ALJ notes J.L.S.'s teacher indicated J.L.S. had no limitations in this area of functioning. J.L.S. testified he was able catch the bus in time for school, to be involved with the functioning of the library, and to do household chores and feed his dog.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.L.S. has no limitations in this area of functioning.

-12-

With regard to interacting and relating with others, the ALJ found J.L.S. had no limitations. J.L.S.'s teacher indicated J.L.S. had no problems with this area of functioning. J.L.S. testified that he has a friend that rides with him on the bus, that he sits with his friends at lunch, that he is able to help students find books in the library and that he sometimes helps his younger nephew with things around the house. Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.L.S. has no limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ found J.L.S. has "less than marked" limitations. The ALJ noted J.L.S.'s teacher indicated J.L.S. had slight problems moving his body from one place to another; however, she noted that while J.L.S. might be slower he was still able to get around in school and to carry his own books. J.L.S. also testified he was able to carry his own tray at lunch and that he was able to get to his classes on time.

The medical evidence shows that while J.L.S. has undergone surgeries to correct a hip injury, J.L.S. continually denied pain to both his treating physician and his physical therapists. The last medical evidence dated February 8, 2006, from Dr. Griffey, indicates J.L.S. had a very nice concentric appearing femoral head. Dr. Griffey also noted it was interesting that J.L.S.'s AVN had even filled in. Dr. Griffey observed J.L.S. was still walking with a bit of Trendelenburg gait but was overall walking heel toe. J.L.S. had no pain with range of motion of his hips. Dr. Griffey indicated J.L.S. would need to undergo hardware removal in the near future to prevent a more difficult removal later in life when J.L.S. would eventually need a total hip replacement. Dr. Griffey did restrict J.L.S. from physical education class in school and recommended he use a cane with uneven surfaces; however, the record as a whole clearly shows

-13-

J.L.S. does not have marked or extreme limitations in this area of functioning.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.L.S. has "less than marked" limitations in this area of functioning.

With regard to caring for oneself, the ALJ found J.L.S. has no limitations.  The ALJ noted J.L.S.'s teacher indicated J.L.S. had no limitations in this area of functioning.  The ALJ also pointed out J.L.S. testified he was able to make his bed, dress himself, get to the bus on time to get to and from school, pick his own food and carry his own tray in the cafeteria.  J.L.S. also testified that he could cook simple meals at home, fold clothes and feed the outside dog.   Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.L.S. has no limitations in this area of functioning.

With regard to health and physical well-being, the ALJ found J.L.S. has no limitations. The ALJ noted J.L.S.'s teacher indicated J.L.S. had no limitations in this area of functioning. The ALJ noted J.L.S. testified that he was not in pain but that his leg does sometimes get stiff. When this happens, J.L.S. testified he had to sit for a while.  The evidence of record also reveals J.L.S. denied pain to both his treating physicians and physical therapists.   Based on the entire evidence of record we find substantial evidence supporting the ALJ's determination that J.L.S. has no limitations in this area of functioning.

Finally, plaintiff argues the ALJ failed to fully and fairly develop the record regarding J.L.S.'s mental impairment.  A review of the record fails to show J.L.S. alleged a severe mental impairment or that J.L.S. has ever sought treatment for a mental impairment.  Plaintiff's brief reveals the troubling early years of J.L.S.'s life however it does not appear that plaintiff or any professional deemed mental health treatment necessary.

-14-

IV.     **Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing

plaintiff's case with prejudice.  **The parties have ten days from receipt of our report and**

**recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The**

**failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de**

**novo review by the district court.**

DATED this 24th day of February 2009.

/s/     *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-15-